51136. SMOOTH ASHLAR GRAND LODGE (COMPACT) OF F. & A. A. YORK MASONS et al. v. ODOM et al.

MARSHALL, Judge.
This appeal arises from orders of the trial court

denying motions for summary judgment and to dismiss or in the alternative judgment on the pleadings filed by defendant Smooth Ashlar Grand Lodge (hereinafter referred to as Grand Lodge) and the three individual defendants Barton, Gray and Newman, who are Grand Master, Grand Secretary and Grand Treasurer of the Grand Lodge, respectively.

Appellant Grand Lodge is a nonprofit fraternal society, an order of York Masons. It is incorporated under the laws of Georgia and governed by a constitution and by-laws. At the annual business meeting of the Grand Lodge in September, 1973, numerous questions were raised by some of its members as to the accuracy and completeness of the annual audit submitted for approval by the membership as required by the constitution and by-laws. Since neither the Grand Master nor the Grand Secretary (appellants Barton and Gray, respectively) could adequately explain possible discrepancies in the audit to the members asking questions, the membership required by motion, duly adopted, a special audit of the Grand Lodge books to be conducted by the standing auditing committee. The discrepancies focused specifically on the alleged failure to account for money shown as on hand at the end of the accounting year 1972, but not carried over to the 1973 accounts and money allegedly accumulated from the raffle of an automobile but not adequately reflected in the accounts.

After the annual meeting was adjourned, the three plaintiffs below were designated at a district meeting to pursue an adequate and appropriate explanation of the alleged fiscal discrepancies. The Grand Lodge is a statewide organization composed of districts which in turn are composed of individual Lodges, aligned in a pyramid chain of control and order running from the individual Lodges to the Grand Lodge. Pursuant to their purported commission, the plaintiffs through plaintiff Odom, made three attempts to contact the Grand Master, Barton. Each attempt was by way of a telephone call placed to the Grand Master. On none of the occasions was appellant Barton at the central office of the Grand Lodge. Messages were left each time with a secretary with a request for the Grand Master to return the call. These

calls were to discuss the audit directed by the membership and specific questions concerning alleged fiscal discrepancies. None of the calls were returned, nor does appellant contend that the special audit has been started or completed.

Apparently because of the lack of success in making contact with appellant Barton or in obtaining the special audit, appellees brought suit seeking a court order audit and to compel appellant Barton to allow appellees to examine the books and records of account of the Grand Lodge. The Grand Lodge and the individual defendants filed their motions for summary judgment, dismissal or in lieu of the dismissal, judgment on the pleadings on the grounds: (1) courts should not interfere in the internal management of fraternal organizations; (2) appellees did not exhaust their internal remedies allowed by the constitution and by-laws; (3) appellees do not represent a majority of the membership of the Grand Lodge; and (4) appellees have no individual property interests in the litigation. *Held:*

1. The parties to this appeal view the issue presented from different perspectives. There is no real dispute of fact. Appellants state the issue to be whether a court will interfere with the internal management of a fraternal lodge where the plaintiffs do not represent a majority of the membership, do not have individual property rights involved, and did not exhaust all of their internal remedies. On the other hand, appellees see the issue to be whether or not they, as plaintiffs, should be allowed as members of a nonprofit organization to inspect the records of account pursuant to Ga. L. 1968, pp. 565, 750 (Code Ann. § 22-2612).

As was stated in *Golden Star of Honor v. Worrell,* 158 Ga. 309 (1) (123 SE 106): "The general rule is that if a benevolent association confines itself to the powers vested in it, and acts in good faith under by-laws adopted by it, and does not violate the laws of the land or any pecuniary or property right of the member of the association, the courts have no authority to interfere with the society by directing or controlling it as to questions of internal policy, but will leave the society free to carry out any lawful purpose in accordance with its rules and

regulations. [Cits.]"

We have no quarrel with that general principle. We do question its applicability to the facts of this case. Plaintiffs below seek to inspect the books and records of a Georgia nonprofit corporation of which they are members. Such an inspection does not seek or tend to interfere with the internal economy, policy, discipline, operation or management of that corporation. Appellees expressly disavow any desire to have a court or through their own actions dictate or oversee the election of officers, manner of raising monies, the proper distribution of funds or the conduct of the business of the Grand Lodge. They simply seek what the law of Georgia grants as a matter of right in Code Ann. § 22-2612, supra to wit: to inspect the records of account of the corporation. In order for appellants to avail themselves of the protection of judicial noninterference, the Grand Lodge must not be in violation of any laws of the state in its corporate relations with its membership. We can find no valid reason for the Grand Lodge or the Grand Master acting for the Grand Lodge to deny the rights conferred by an existing state statute. Where such interference is necessary to enforce rights recognized by the law, the courts of this state have not refused to intervene in the internal affairs of a benevolent society simply because that society has its own governing rules. *Hornady v. Goodman,* 167 Ga. 555 (146 SE 173). On this ground alone, the trial court was correct in refusing to grant appellants' motions.

2. In the court below, appellees, in addition to the right to examine the books and records of the Grand Lodge, sought to have the court appoint an auditor to investigate the accounts of the Grand Lodge and report the results to the court. To grant such a request would cause a court to come far closer to inserting itself into the internal operations of the corporate Grand Lodge. In this regard, appellant calls our attention to a second well-established rule. "It is a well-settled rule, that, before resorting to the civil courts for redress, a member must exhaust all the remedies provided by the society by appeal or otherwise." *Union Fraternal League v. Johnston,* 124 Ga. 902, 905. Appellants contend that judicial process should be denied appellees because the

constitution and by-laws of the Grand Lodge provide a grievance process of which appellees have failed to avail themselves.

We note that in the caveat against seeking the aid of the law, there is an implied admission in the constitution and by-laws of the Grand Lodge that ultimate recourse to law is available. Part two under the ancient charges at paragraph 6 states, "You must never go to law about what concerns Masonry, without absolute necessity, apparent to the Lodge." Thus, we will look to the provisions on grievances to determine if recourse to law was necessary or if the matter should have been retained within those established procedures.

The grievance procedures are set forth in part twelve of the constitution and by-laws. In substance, the procedures provide that when a controversy arises between subordinate lodges, or between a lodge and its master, or between a lodge and its member(s), or between a lodge and members of another lodge, or between members of different lodges and a charge is brought, then in any such controversy it is stated in mandatory terms that it *shall* be the duty of the Grand Lodge when in session by resolution, or by the Acting Grand Master during recess, by warrant to appoint commissioners to hear and determine the grievance. The procedure then goes on to consider disputes between a subordinate and the Grand Lodge and/or the Grand Master. There is a dramatic difference. "Commissioners *may,* in like manner be appointed, *at the discretion of the Grand Master* or Grand Lodge in case of a difference between the Grand Lodge and one of its subordinates." (Emphasis supplied.)

Appellees properly emphasize that the Grand Master was present at and conducting the annual business meeting of the Grand Lodge in September, 1973. The Grand Master was fully aware of the motion duly approved by the membership to explain discrepancies in the audit committee's report by means of a special audit with report to the membership. In fact, the minutes of that meeting reflect that appellants Barton and Gray prior to the motion stated to the inquiring members they were willing to re-check the records and present the results. It further appears that following this general meeting and

the promises of the appellants to recheck the records and present the results as reenforced by the requirement to perform a special audit, appellee Odom made at least three attempts to contact the Grand Master concerning the alleged fiscal discrepancies. In spite of requests for appellant Barton to return these calls, no contact was made. The record and transcript are devoid of the promised fiscal report and audit.

Under the facts above set forth, we do not consider it to have been necessary for appellant to file a formal charge or grievance concerning fiscal discrepancies with the Grand Master to determine if he would appoint commissioners to investigate the matter. In substance, a formal grievance was contained in the minutes of the corporation. Appellant Barton, in effect, had been directed by the membership to furnish the requested information. To state that appellees should have pursued further a course of action which was, under the constitution and by-laws, totally discretionary with the Grand Master, is to require a fruitless undertaking. A party is never required to do a vain and useless thing before undertaking to assert his rights. *Finney v. Blalock,* 206 Ga. 655, 660 (58 SE2d 429); *Stuart v. State,* 123 Ga. App. 311, 316 (180 SE2d 581). There was no further internal procedure available to appellees to compel the information sought. We reiterate that a benevolent association must act in good faith and in accordance with its own constitution and by-laws if it wishes to insulate itself from external judicial regulation. *Golden Star of Honor v. Worrell,* supra; *Hornady v. Goodman,* supra. Under the facts as presented to the trial court, there was no error in denying the motions for summary judgment, dismissal of the complaint or judgment on the pleadings.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED SEPTEMBER 17, 1975 — DECIDED NOVEMBER 12, 1975 — REHEARING DENIED DECEMBER 2, 1975 —

*Moffett, Henderson, Jones & Barnwell, F. Glenn*

*Moffett, Jr., C. Cyrus Malone, III,* for appellants.
  *Robert S. Slocumb, William Y. Barnes, III,* for appellees.